New Year's Day 2017, Paul Donnelly awoke in his trailer, exited his trailer, walked across the lawn into Dennis Suellentrop's house. Mr. Suellentrop was asleep, passed out. Mr. Donnelly asked to use the cell phone. Mr. Suellentrop could not give permission because he was asleep or passed out. Mr. Donnelly takes the cell phone and he's used it before so he knows what the password is. He opens it up, makes calls, and then he says he gets nosy. Starts to look around at pictures on the cell phone. He finds disturbing images of child pornography. The police are called. The police arrive to the home of Mr. Suellentrop. Mr. Donnelly greets the police in the yard with Mr. Suellentrop's phone, a password-protected phone. Mr. Donnelly uses the password to assist the police at the request of the police to help him look at what images are on the phone. The police do not get a search warrant. The police just happily look at the pictures on the phone. Then Sergeant Poe is called to the scene. Sergeant Poe is a detective sergeant with the Jefferson County Police Department. He gets there. Once again, people help with the password-protected phone and show it to Detective Poe. Detective Poe speaks to Mr. Suellentrop. He asks for permission to search his phone and to search his house. Mr. Suellentrop denies both requests. He refuses consent. Mr. Suellentrop is taken into custody. Mind you, the whole time the phone had been in the custody of the police, not Mr. Suellentrop. Mr. Suellentrop is arrested. The police take the phone, bring it back, search it again. Had to get through the password, got through it again, then take the phone to a crime lab where the crime lab searches the phone again. Not once was a warrant ever applied for. Now, when you say they brought it back and searched it again, you mean brought it back to the house? To the police department. It was looked at in the yard, it was looked at in their home, then they took it, Mr. Suellentrop was arrested and brought to the Jefferson County Sheriff's Department. They took the phone back with them to the police department. I thought there was evidence that they turned the phone off at the house. Maybe I'm getting the facts wrong. The phone was turned off, then it was turned back on at the police department. It was turned off and on. It was searched three separate times, actually. It was searched at scene, it was then turned off, it was searched later in the Jefferson County Police Department, and then when they brought it to the forensic lab, the forensic lab, of course, took the phone apart and basically found everything that they could find on it. And when did the state warrant issue in that county? The state warrant issue. So when they asked Mr. Suellentrop, they awake Mr. Suellentrop and say, we want permission to search your house, search your phone. He says, no. He says, we're going to get a state search warrant. He says, get whatever you want. But in the search warrant. No, no. I'm asking when the warrant issued. If it was... The same day, Your Honor, January 1st. Was it before the police department search or was it after? It was after. After the police? But was it before the forensic search? It was before the forensic search. Forensic search, I believe, occurred almost a month later, Your Honor. Now, Your Honor, I shall remind the Court, January 1st of 2017 was 30 months after the Riley decision. Where was the phone located during the search of the home? With the police in their custody. Actually, in a pocket. The police officer took the phone. After he looked at it, turned it off, put it in his pocket and held on to it. So to make sure, obviously, that Mr. Suellentrop or anyone else had access to it. So it was at the scene with the officer while he was searching? Yes. Then it was brought back. When they first arrived, the phone was showed to the police. His roommate, at the request of the police, had to use a password to open it up to show it to the police. In violation of high ball. Showed it to the police. Police officer takes it, looks at it, turns the phone off, puts it in his pocket. Waits for Sergeant Detective Poe to get there. Turns the phone over to Sergeant Detective Poe. Sergeant Detective Poe then speaks to Mr. Suellentrop. They wake him up. They ask permission. Permission to search his home and to search his phone. Both are denied. He says, I'm going to get a warrant. He says, get a warrant. Well, they get one. Mr. Suellentrop is taken to the Jefferson County Police Department, placed under arrest. The phone remains in the custody of the police the entire time. Of Poe? Of Poe or of, I can't, whether, it might have, it's either Poe or the arresting officer at the scene. But the, there was three officers there.  It was one of those three officers who had the phone, Your Honors. So, the case, a search warrant is never applied for, for the phone, but it is repeatedly searched. The case gets issued in Jefferson County. The case is proceeding. The Jefferson County prosecutor realizes that it violates Riley, that a search warrant was never, another search warrant was never applied for on the phone itself. By the way, every single image is just on the phone. There was no child pornography discovered in the home or anything else. It was everything that this case is about is on the phone. Those are all the images. The Jefferson County prosecutor then alerts the federal authorities. The federal authorities are alerted. Detective Burbridge gets on the case. And Detective Burbridge is a veteran of the Federal Bureau of Investigation. He knows there's a Riley violation. He applies for a new search warrant in the federal courts. But when he applies for a search warrant in the federal courts, Your Honors, he makes many omissions. Specifically, he never mentions that the phone had been searched not once, not twice, but three times. He makes omissions. I guess he didn't want to trouble the court with what had previously happened. He tries to hit a reset button and have the case begin again in the federal court. The case is here now, Your Honor. And the government has been relying on, or I should say the courts have relied on, the independent source rule. Would the police have applied for a warrant without the tainted information? And would the affidavit support probable cause without the tainted information? And that is from the Supreme Court v. Murray and two Eighth Circuit cases, the U.S. v. Rodriguez and Levington. Your Honor, there is no other investigation or independent investigation. There's one investigation. Jefferson County prepared a report. Then they prepared supplemental reports. When the third search was done at the forensic laboratory, they prepared another report detailing what was on the phone. So when Detective or Agent Burbridge took this investigation over, his investigations consisted of, Your Honor, reading the Jefferson County reports. He didn't go out and interview anyone. He didn't do anything. He read the reports. But because he was from a different agency, he could go into a different court and ask that all be forgiven. He omitted the fact that the phone was ever searched. Well, is your argument that the federal magistrate issuing the warrant should have done was entitled and indeed required to do the Fourth Amendment analysis that now is up to us on appeal? Otherwise, what was omitted in terms of the background, Burbridge knew there was a violation. Well, he actually admitted that, Your Honor. Okay. So even putting your spin on it, I don't understand why it had to be disclosed. If there's independent probable cause, the federal magistrate can act upon it. That was the argument made, Your Honor, by the government in this case. Oh, okay. What I'm asking was the government. Yeah. Yeah. Well, it seems to me it's a legitimate thing to argue or ask about. I mean, the whole, you know, the Frank's jurisprudence says it has to matter if there's independent probable cause within the warrant application. But, Your Honor, in order to get there, Your Honor, though, you have to show, you have to make a finding that police would have applied for the warrant without the tainted information. Because you're talking about the second step. No, no, that doesn't invalidate the warrant. The warrant goes by the four corners, I understand. But I'm saying now that you're examining the warrant, we are challenging the warrant. We're saying the warrant was facially deficient. You should say the warrant was tainted. It's tainted. But I think your Frank's argument doesn't add anything. Okay. I mean, I can be wrong. And if you have authority that somehow a prior taint that doesn't affect the showing of probable cause must nonetheless be disclosed to the warrant issuing magistrate. I've never thought that was part of Frank's jurisprudence. It is not, Your Honor. Okay. It is not. But, Your Honor. You certainly can argue that the taint matters. And you are, obviously. The magistrate based his rulings on two main points. He based it on the independent source and on good faith. Those two exceptions. But, Your Honor, I will argue again there is no independent source. The tainted investigation without a warrant pursuant to Riley was the only investigation done on this case. The only difference between the federal investigation and a state investigation is one was signed off on by a federal agent. But they're the exact same investigations. The prosecutor in his brief on page 34 responds to my point. Now, I'm quoting Supreme Court United States versus Murray followed up by two Eighth Circuit opinions that affirm it. Rodriguez and Levington. And they ask two questions have to be answered. Would police have applied for the warrant without the tainted information? The prosecutor in his response states that, well, you should ask a different question. No, you're not allowed to. See, the Supreme Court and Eighth Circuit have said what question you have to ask. Your Honor, that is as close to a tacit admission as the government will ever make. They had no answer to the points laid out in my brief. If you read his page 34, he wants to ask a different question. Not the questions that were required to be posed by Murray, Rodriguez, and Levington. And, Your Honor, the last point, the second half of what the magistrate relied on was the good faith argument. And if I may be so bold as to paraphrase Samuel Johnson, and the good faith exception is the last refuge of the scoundrel. It means a law enforcement officer is coming to court, hat in hand, to confess, to beg forgiveness of misdeeds which they perpetrated upon a citizen. And in this case, that's what happened. Sergeant Poe, 30 months after the Riley decision, a detective sergeant in charge of the investigation, ignores the law, searches the phone repeatedly, sends it off to be searched again. He says, I acted in good faith. I didn't know. There's also a concept in the federal courts called willful blindness. He remains willfully blind to the decision that happened two and a half years ago. Because you know why? It's a lot easier to come to this court and beg your forgiveness than ask your permission. I thought the good faith argument was that a reasonable officer could have believed that the phone was among the electronic devices covered by the warrant. Your Honor, a reasonable officer had 30 months to realize that no longer applied. A phone isn't a computer. A phone is unto itself, it says by Riley, separate, distinct, and unique. But the 30 months doesn't matter. I mean, it was at the time the warrant was executed and then they searched the phone pursuant to the warrant. That's when the mistake occurred. The mistake occurred when they never applied for a warrant to look at the phone, the Jefferson County officers. The phone was in their possession. When they went to get a search of the home, they never mentioned the phone in the affidavit of the warrant. Detective Poe. And the testimony, as I understood it, was it was New Year's Day. There was an on-duty state's attorney. The officer asked for a warrant, I think to cover the phone, and it didn't end up in the warrant. So that's my recollection of the record. Actually, Your Honor, that's incorrect. Detective Poe stated, and it's in my brief several times, can we look in the house for other evidence, for other evidence. Detective Poe was of the belief that he could search the phone incident to arrest. Detective Poe testified he believes since he had the phone, the man was arrested, he could search the phone. Then he applied and he specifically stated we're looking for other evidence. It's in my brief, and I quote the transcripts. Looking for other evidence in the house. There was no other evidence. The only evidence was on the phone. And it does matter that it's 30 months later. He is a detective sergeant. He trains other officers. If I came into this court and started arguing laws, and started arguing a law that had expired three years ago to this court, and I said, well, Your Honor, it's okay because I believe in myself. You'd think I'm crazy. It would be my job, my duty to know what the law is. He's a police officer searching people's homes. He has a duty. He trains other officers. He remained willfully blind to the change in the law. And he came in, Your Honor. Well, do you agree that this warrant would have allowed the search of a phone that had been found in the house during the search? Yes, it would have been if it was asked for. The phone, actually the phone. No, I'm saying if they had found a second phone pursuant to this warrant, this warrant would have allowed searching that phone. No, it would not. If they would take that phone, they would have to take that phone, and they would have to get another, because the phone is separate and distinct, as it states in Riley. If they found a phone in the house, or if they asked for a phone in the warrant, and they described it. They wouldn't have to get a second warrant if they've already up front said, we think we're going to find a phone, and we want to search our computer or whatever. In other words, Your Honor, they had every opportunity. They had the phone in their hands. They could have described it with specificity, and it would have been fine, but that never happened. It never happened. Well, I'm just wondering whether the description of electronic devices. It does not know, Your Honor. That was brought up in other cases Riley has specifically said. They say a phone is a computer. The Riley court said it might be, but a phone is separate and distinct, and it must be pled specifically a phone. Which case says on the face of the warrant it has to say cell phone or mobile phone? Riley. Riley? And, Your Honor, there have been no cases. I just litigated this almost similar issue yesterday against the office, their office. There have been no cases post-Riley that have changed it. It's separate and distinct. They're saying you have so much of your own personal private information on a phone that it's different from other things. There are personal assistants. There are personal computers. There are day planners. They have everything on there, and you have to plead with specificity. You have to actually request a cell phone pursuant to Riley, and they've made challenges. They've all been denied. Thank you, Your Honors. Now, your first issue was about Donnelly, and it was a private issue. Private citizen. Yes, Your Honor, that's pursuant. Because I understood the initial search in the yard was limited to the picture that Donnelly directed it to. Wasn't that the finding? Yes, but, Your Honor. So now we're talking about the post-home search warrant. Yes, and that's the Sparks case from the 11th Circuit says you can replicate the search, but you cannot exceed it, and they did exceed the search, Your Honor. Before the home? Before the home search? Not in the yard. I haven't heard. I thought that that was the answer. No, Your Honor. No, you are correct. They exceeded the search of the phone back at the police station. I have been focusing on your first issue. Okay. And, Your Honor, the Highbolt case, it's a three-part test. Mr. Donnelly was not a private citizen, was not acting as a private citizen. Well, you've clarified. Okay, thank you. What happens if you lose on the private search argument so that they could look at at least, what is it, two or three images that the magistrate judge identified, but you win on the search of the rest of the phone? Is there still enough there to support the plea? No, it would be, the images, specific with child pornography, the number of images, what's on the images can dictate a sentence from three years up to, as my sentence got, my client got over 100 years. So, if it was limited to just certain pictures, you would limit a defendant's exposure in decades. Well, that gets into whether the exclusionary rule applies at sentencing. We have here a conditional guilty plea. Yeah. And I'm just wondering whether, if the smaller amount comes in, whether the case would have to go back or whether we should affirm the conviction. I don't know if you thought about that. I just, I would, the best I could do for that, Your Honor, is look at the Sparks case where I would say they exceeded the search. They're allowed to replicate. That's your argument why they can't do the private search at all, but I'm saying if we were to agree with the district court on that one issue, that gets in, as I understand it, only two or three images. Yes, Your Honor. But that, would that be enough to, I mean, would your man want to withdraw his plea if they could only use the two or three images? Yes. My client was sentenced to 140 years. He would withdraw his plea. Okay, well, we'll think about that. Because the images which, when they exceeded the scope of the search in the yard, what they found on that phone, Your Honor, made this case into a behemoth in terms of as far as the largest sentence, the largest guideline recommendation I've seen in 23 years as an attorney. Thank you, Your Honor. Any other questions? Thank you. Good morning, Your Honor. May it please the court, Mr. Hogan. I just wanted to go through a couple things, is go through the facts again. And I just want to point out, number one is what happens is Mr. Donnelly, he has permission to go into the house, as the magistrate judge found. He has also had permission to use the cell phone. He goes into the house on January 1st after partying all night. The only person at the residence at that time was Mr. Sullentrop. He goes into the bedroom and goes in, sees the phone, starts using the phone. He's going to call his girlfriend. And as Mr. Hogan says, he gets nosy. And then as he's going through the phone, he finds some images of child pornography. And what does he do at that point? And this is about 7 o'clock in the morning when this starts. Then he calls, not law enforcement, he calls a friend. And the friend is Matt, who has also resided at that residence. And Matt comes over, and what are they going to do? They're not going to call law enforcement again. They're going to handle it on their own. They're going to take care of it in-house. Somebody called law enforcement. They believe it might have been the victim's mother, who is not there. And law enforcement shows up about 1.30 in the afternoon. At 1.30, Matt is gone by then. And Mr. Donnelly is there. And he comes up and he sees the officer and thrusts the phone at the officer and shows the officer the one image. And the officer then takes the phone, seizes the phone, turns it off and puts it in his pocket. Well, let's talk about what was argued this morning. What's your response to the interpretation of Riley proposed by suggested urgency? Well, I don't think that Riley goes at – well, Riley, actually, I've cited Riley. And the reason I cited Riley is because Riley says a cell phone is like a computer. And in that search warrant that the state had obtained, Riley says, you know, we're looking for mass storage devices, including CDs, DVDs, computer, thumb drives, et cetera. And Detective – or Sergeant Poe – So you think he's over-reading Riley? I do. I do. phone is not an electric device or a computer. It's got to be named separately in the warrant. I do agree that that's overstatement, yes. How about the issue that the phone wasn't located, I think, on the property, that the officer had already seized the phone and it wasn't in some sense then obtained pursuant to the warrant? Yeah, so that is the issue with the state search warrant, eventually, is here the officer is, he has the phone with him when he's going to see the prosecutor. The phone is not on the residence at that time. And when he's meeting with the prosecutor, he says, hey, I want to be able to search this phone as well as the residence. And the prosecutor says yes. And, in fact, when you – and so they go back, and about 7-19 that night, so Sergeant Poe got there about 2-17-19 that night, they got the state search warrant. Was there an additional search of the phone prior, at the police station prior to issuance of the state warrant? No, there's – in fact, the – I referred the court to the transcripts. It's page 104, 105. On there it says when was there, on page 104 it asks when was the forensic examination. And Sergeant Poe testifies that he thought it was either late February or early March. No, the forensic was later. But counsel has indicated, I think, that there was a first one, there was an additional one at the police station, and then there was one, a forensic search. Yes, and then on page 105 it says that after that phone was turned off, was it ever turned back on prior to the forensic examination. And he says no, it was not turned back on. So there's only the – so really the officer's never searched through the phone. It was dynamically showing him. And so there was a search because he saw that image that was on the phone, but they weren't the ones paging through and turning the phone on and looking through it. So you say there was never an intermediate search. It was just the forensic search. Right. There were two forensic searches conducted by the state. All right. And those were done in February or March. And you say that's pursuant to this warrant. Correct. Which says you can seize computers at the residence. That's correct, Your Honor. So did Poe bring the phone back to the residence during the search? Or did it stay at the police station? The record is not clear on that, Your Honor. And it was – there's no record showing that he brought that back to the phone, or back to the residence. So what if it wasn't actually seized at the residence, pursuant to the warrant? Right. So here's what happens. It's not going to be searched under that warrant. Right. So here's what happens is – No, I don't mean the facts. I mean what about the legal problem? Right. So he's relying on good faith. So he could rely on the prosecutor saying, hey, yes, this covers it. And he does rely on the – What case says the prosecutor – I mean the searching officer can rely on what the prosecutor tells him if it's not in the document? Right. So it says – That's the case for that. Right. So it says you can objectively – one of the cases – well, the case is the United States versus – I apologize. I mean Leon says if the warrant on its face is defective or doesn't – I forget exactly the wording. Is this garrison that you're talking about, that the reason – or reasonable mistake about what the warrant says? Yeah. Actually, what I was looking at is Clay, because one of the things you're looking at is whether the officer – when you're trying to test his reasonableness, whether he acted objectively reasonable, one of the things you look at is determine whether or not he consulted with an attorney. And here he consulted with an attorney, and specifically he consulted with the prosecutor and asked, would this cover it? And he was asked, well, if it didn't cover it, what would you have done? I would have gotten another search warrant for it. Does he have any obligation to look at the warrant? Well, the warrant talks about the computer, and the detective testified that the mass storage is what he thought covered that. And really a key thing is when you look at the return. And in the return, he says that he received the cell phone from the reporting party when he files the return. So he's not listing – saying this came from the house. He's saying it got from the reporting party. I think that's why he's trying to comply. How does that help? Because it shows that he's acting in good faith. It shows he's telling the truth about where he got it, but does it show that he had authority to search it under this warrant? If he says, I didn't seize it under the warrant, I got it earlier. Right. I think that's why – right. And I don't think – and I have not argued that the cell phone falls within the warrant, because I believe he had a cell phone with him. What I was arguing is that he reasonably believed that that cell phone. Reasonably believed what? Believed that the search warrant covered the cell phone. So here's what – this is all on the same day. This person who gets the cell phone from the house and gives it to him, he takes it with him. So it came from the house on that very same day. And he goes and shows it – he doesn't show it, but he goes and talks to the prosecutor about it. I mean, this is something that he's – I guess part of it is if we're going to exclude the evidence, you're going to look at what did the officer do wrong. And here he did everything right, what he thought he should do. He takes it. He's looking for a search warrant to cover it. He asks the prosecutor, does this do it? And he believes it does cover it. And then he goes and executes the search warrant. Then a couple months later, he follows through and looks at the forensics on it. Well, if he did something wrong, it was taking up the following – conducting a forensic search without a warrant that provided for searching that phone. Right, but I think – Because this warrant – I think what you're saying is this warrant only provided for searching computers that were found at the house during the search. Yeah, but he believed that that came – I mean, I could stand back here and look at it and say, well, yeah, the phone was with him at the prosecutor's office. He got the search warrant. But you have to look in a police officer's eyes is what would an officer in his place do? I mean, he did what he was supposed to do. And I don't think the exclusionary rule would apply because it was – How did he do what he was supposed to do? Because he goes up and he says, hey, we got this from the house. By asking for a warrant that he didn't then get, you mean. Yeah, but this wasn't just, you know, in the case I just cited, you know, what happened in that case is they give the Clay case, they give the – they wait for the prosecutor to make a response. And they never hear a response, so they figured the search warrant's okay. In my case, he specifically asked the prosecutor, is this phone covered by the search warrant? You know, this is a prosecutor. It's an attorney, so he should be able to, you know, and that's one of the factors. It's not a, you know, for sure thing. What did the prosecutor tell him? This will cover it. This search warrant will cover it. And that's what he testified to during the hearing. And he testified that if it didn't cover it, then he would have just got another search warrant. So you – so then, Your Honor, going on then to – there's the federal search warrant. The federal search warrant is done, and this is done in June, is another search warrant at Scott. And Mr. Hogan is correct. There's a two-step analysis to determine whether or not this is an independent source. And the first part is, do they get this independent of the – do they get this independent of the taint on there? And the answer is yes. And the second step is, you know, was the magistrate – was there taint, and can we remove that? Does it still show a probable cause? And the answer is yes on both of that. What about the question, would they have applied for the warrant but for the impermissible search? And I think, Your Honor, going to that is that – I don't see where the judge made that finding. Right. Well, he says that they had another reason. He said that when Special Agent Burbridge got it, he did say yes. Special Agent Burbridge says, I don't know whether or not that state search warrant covered the cell phone. But he wanted to get all the evidence off the cell phone. And that's what he testified. And that's what the judge – the magistrate judge then found, is that, yes, he was trying to go beyond. He was trying to get additional information. Would you remind me what the probable cause was for the federal warrant? Was it the picture that was, as you say, thrust in the officer's face? Is that – Right. So Special Agent Burbridge was – his goal was to put the judge back in the position of January 1st. And he goes through and he lays out what happened on January 1st. And it's only that evidence that was obtained. Also, additionally, the detective – excuse me – the defendant had confessed in the car to one of the other officers after being given Miranda and admitted that he had done these things. And that's what the magistrate judge had in front of him when he issued that warrant. What do you think the judge meant by saying the FBI would have applied for a warrant even if there were no concerns regarding the state-issued warrant? Right, because Special Agent Burbridge said that he wanted to get all the information off the cell phone. He wanted to be able to do a thorough forensics examination. And he didn't say thorough forensic examination. That's my words. But that's what I believe he meant by that. I guess what I'm getting at is even if there were no concerns regarding the state-issued warrant, that doesn't mean the same as even if they hadn't – even if he hadn't known about the impermissible searching. Isn't that what the judge is supposed to be inquiring about? But I don't think it's like – so in Brooks that I cited, Your Honor, so that's a case where they – it's like seven days before trial they get a search warrant. And so there the court found there was – when they're going back, and this is a search of a cell phone, when they're looking at the cell – the reason they go back and look at the cell phone – I guess I should back up. So what that case talks about is there's a bank robbery and they go in and they legally violate the Fourth Amendment by looking at the cell phone. They do an incident to an arrest and they see pictures of the defendant on there. About seven days before trial they get a federal search warrant and they go back. And what they're looking for this time is they say, hey, look, we have the – we know that there's – we're also looking for are there any accomplices. And so the court said, well, that's fine because they're looking for something else. I can't imagine at that time that the government didn't know that those pictures were on there. And it's not saying that you have to eliminate those pictures, eliminate that from your knowledge. It just says, do you have another reason? Do you have an independent reason for getting that? And I think that's what they're trying to do is put the magistrate – that's what was trying to happen is put the magistrate judge back to work before there was any taint. And, Your Honor, just to make sure that the – there are eight counts that were charged in this case. The counts seven and eight would survive if the court finds, yes, that Donnelly's search was a – that he independently looked at this and that was fine. The other ones, if the court reversed on that, would not survive. Did he plead to all eight? He pleaded to all eight. Oh, I see. So you're saying two would survive based on Donnelly alone. Correct. And then the question would be at sentencing whether – I guess there would be a resentencing and the question would be whether the other evidence can come in for the guidelines. Right. But the maximum would be significantly lower. It would be a lower statutory maximum. Yes. I see. Thank you. Thank you. I'd ask the court to affirm the district court's findings in this case and deny the motion to suppress. Thank you. Thank you. Mr. Hogan used his time. Yes, Your Honor. The case has been thoroughly briefed and the arguments helped focus everything and we'll take it under advice.